# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
Filed: March 8, 2017
[Not to be Published]

| | | |
|---|---|---|
| * * * * * * * * * * * * | | |
| ALEXANDRA TOES, | * | |
| | * | 16-007v |
| Petitioner, | * | |
| v. | * | Chief Special Master Dorsey |
| | * | |
| | * | Final Attorneys' Fees and Costs; |
| SECRETARY OF HEALTH | * | Reasonable Basis; Gardasil; |
| AND HUMAN SERVICES, | * | Lichen Sclerosus; Lichen Simplex |
| | * | Chronicus; Adjusted Hourly Rate; |
| | * | Reduction for Duplicative Entries |
| Respondent. | * | |
| * * * * * * * * * * * * | | |

Andrew D. Downing, Van Cott & Talamante, PLLC, Phoenix, AZ for petitioner.
Voris Edward Johnson, United States Department of Justice, Washington, DC for respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

On January 4, 2016, Alexandra Toes ("petitioner") filed a petition on pursuant to the National Vaccine Injury Compensation Program.[2] She filed an Amended Petition on April 28, 2016. Petitioner alleged that she suffered a severe adverse reaction as a result of receiving her third Gardasil vaccination on December 17, 2012. Petition ("Pet.") (ECF No. 1); Amended Pet. (ECF No. 14). On petitioner's motion, a Decision dismissing the petition for insufficient proof was issued December 9, 2016.

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party:  (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 et seq. (hereinafter "Vaccine Act" or "the Act"). Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

1

On January 12, 2017, petitioner filed an application for an attorneys' fees and costs, requesting $12,025.00 in attorneys' fees and $4,160.11 in attorneys' costs. On January 23, 2017, respondent filed a response, asserting that the claim lacked a reasonable basis and objecting to any award of fees or costs in this case. Respondent's ("Resp.") Response at 1. On January 26, 2017, petitioner filed a reply in support of her motion. On January 31, 2017, she filed a supplemental application for attorneys' fees and costs, requesting an additional $4,108.50 in attorneys' fees and an additional $186.13 in attorneys' costs. Therefore, petitioner's final application is for $16,133.50 in attorneys' fees and $4,346.24 in attorneys' costs, for a total of $20,479.74 in attorneys' fees and costs.

For the reasons discussed below, the undersigned finds that petitioner has demonstrated a reasonable basis for filing her claim and therefore may receive an award of reasonable attorneys' fees and costs of $20,218.54.

## I.   Procedural History

On January 4, 2016, petitioner filed her petition, alleging that her third Gardasil vaccination received on December 17, 2012, caused "a severe adverse reaction" beginning in January 2013, which was subsequently diagnosed as "autoimmune Lichen Sclerosus." Petition ("Pet.") at ¶¶ 1, 2. Petitioner notes that she "recently contacted Counsel as to a potential claim" and was filing the petition "to ensure that the statute of limitations period does not lapse." Pet. at 1, n. 1. No medical records or other documentation were filed with the petition. Petitioner pledged to "supplement this Petition accordingly, and file a Witness Statement of Alexandra Toes, once more medical records become available." Id.

The initial status conference was held on March 15, 2016. Mr. Andrew Downing appeared on behalf of petitioner and Ms. Julia McInerny appeared on behalf of respondent. During the status conference, petitioner stated that she first contacted counsel in December 2015 and that she filed her case quickly in an effort to avoid the statute of limitations. Petitioner was in the process of obtaining all records of medical care and treatment she received since 2010, the year in which she received the first Gardasil vaccine, primarily medical records from her university. Petitioner would then assess the claim and determine how she wanted to proceed. The undersigned ordered petitioner to file a status report indicating how she would like to proceed by April 14, 2016. If petitioner wished to remain in the Program, she was also ordered to file all medical records since 2010, a Statement of Completion, and an amended petition. Scheduling Order entered on March 16, 2016 (ECF No. 8).

Petitioner filed medical records on April 7, 2016 and April 8, 2016. Notices of Filing Medical Records (ECF Nos. 9-10). She filed a Statement of Completion on April 12, 2016. Statement of Completion (ECF No. 11). On April 28, 2016, petitioner filed her signed statement and her amended petition. Amended Pet. (ECF No. 14); Pet. Statement (ECF No. 15). Petitioner's statement alleges that she began experiencing itching and pain in her genital area on or about January 16, 2013, while the Amended Petition alleges that onset was in mid-January 2013. Petitioner's statement and the Amended Petition both state that petitioner has been diagnosed with lichen sclerosus. The amended petition provides that lichen sclerosus is

2

"believed to be an autoimmune disorder in which the body's immune system mistakenly attacks and injures the skin." Amended Pet. at 2. The petition cited one article for the proposition that lichen sclerosus was an autoimmune disorder and two articles for the proposition that similar inflammatory dermatoses have been causally linked to vaccination.

On June 13, 2016, respondent filed a status report, in which he declined to pursue settlement negotiations at that time. Status Report (ECF No. 16). Respondent proposed to file the Rule 4(c) report by July 29, 2016. Id. The undersigned granted this request. Scheduling Order (ECF No. 17).

On July 28, 2016, respondent filed a report recommending against compensation, in accordance with Rule 4(c). Respondent's ("Resp's") Report (ECF No. 18). Respondent "reserve[d] the right to challenge the reasonable basis of petitioner's claim under the Vaccine Act, as presently there does not appear to be any evidence of a vaccine-related injury." Id. at 2, n. 2. The Rule 4(c) report noted that on November 27, 2013, petitioner received a diagnosis of lichen simplex chronicus. Id. at 4-5 (citing Pet. Ex. 12 at 6-8). But subsequent medical records, as well as the petition and the affidavit, diagnose petitioner with lichen sclerosus. Id. at 5-7 (citing various exhibits).

The Rule 4(c) report recommended against compensation for petitioner's alleged lichen sclerosus, for two reasons. Resp.'s Report. First, according to the medical records, petitioner began experiencing vaginal itching in or before November 2012. Petitioner filed her claim in January 2016. If vaginal itching constitutes a symptom of lichen sclerosus, petitioner did not file her claim within the statute of limitations. Id. at 9.[3] Second, respondent stated that petitioner was not entitled to compensation because she had not produced medical records or an expert report establishing "a causal connection between the HPV vaccine and her lichen sclerosus." Id. at 10-12.

The undersigned then held a status conference on August 30, 2016. Scheduling Order (ECF No. 20). During the status conference, the undersigned and the parties discussed the best way to proceed. Id. They agreed that petitioner should file an expert report explaining the diagnosis of lichen sclerosus; its cause; its initial manifestation; and onset in petitioner's case. Id. Petitioner's expert was also directed to explain why the HPV vaccine, rather than petitioner's other infections, was the initial triggering event that led to itching, and then to her ultimate diagnosis of lichen sclerosus. Id.

The undersigned ordered petitioner to file her expert report by November 28, 2016. Id. An expert report was not received by this date. On December 1, 2016, the undersigned ordered petitioner to file the expert report no later than January 3, 2016. Scheduling Order (ECF No. 22).

---

[3] Respondent also states that this would place onset before petitioner received the vaccine at issue, in December 2012. Id. at 9.

3

On December 7, 2016, petitioner filed a motion for a decision dismissing her case. Petitioner's ("Pet'r's") Motion ("Mot.") (ECF No. 23). Pursuant to the Order entered on August 31, 2016, petitioner had retained an expert, who reviewed petitioner's medical records. The expert stated that the working diagnosis of lichen sclerosus was incorrect. Id. at 1-2. Rather, the original biopsy confirmed a diagnosis of lichen simplex chronicus. Id. at 2. Furthermore, "lichen simplex chronicus would not be autoimmune in nature or triggered by vaccination at a site remote from the injection site." Id. Therefore, petitioner stated that she is unlikely to demonstrate entitlement to compensation and requested that the case be dismissed. Id. The undersigned issued a decision dismissing the petition for insufficient proof on December 9, 2016. Decision Dismissing Petition (ECF No. 24).

On January 12, 2017, petitioner filed an application for attorneys' fees and costs. Pet'r's Application ("App.") (ECF No. 29). Petitioner requested $12,025.00 in attorneys' fees and $4,160.11 in attorneys' costs. Id. at 6.[4] Petitioner's counsel represented that he paid the expenses associated with prosecuting this claim out of his own pocket, for eventual reimbursement. Id.

On January 23, 2017, respondent filed a response opposing petitioner's application for attorneys' fees and costs, on the grounds that reasonable basis did not exist when the claim was filed and was never established during the pendency of the claim. Resp's Response (ECF No. 30). On January 26, 2017, petitioner filed a reply in support of her application for attorneys' fees and costs. Pet'r's Reply (ECF No. 31).

On January 31, 2017, petitioner filed a supplemental application for attorneys' fees and costs, requesting an additional $4,108.50 in attorneys' fees and an additional $186.13 in attorneys' costs. Pet'r's Supplemental ("Supp.") App., Exhibit A at 2.

Therefore, petitioner's final application is for $16,133.50 in attorneys' fees and $4,346.24 in attorneys' costs, for a total of $20,479.74 in attorneys' fees and costs. Petitioner's application for attorneys' fees and costs is now ripe for a decision.

---

[4] In his application, petitioner requested $13,891.50 in attorneys' fees and $4,160.11 in attorneys' costs, for a total of $18,000.00 in attorneys' fees and costs. Pet'rs' App. at 6. However, this does not appear to be accurate. Review of the billing record indicates the following amounts:

| | |
|---|---|
| Andrew Downing | $ 6,405.00 |
| Robert W. Cain | $ 3,090.00 |
| Danielle P. Avery | $ 2,530.00 |
| Total Attorneys' Fees | $12,025.00 |
| | |
| Attorneys' Costs | $ 4,106.11 |
| Total Attorneys' Fees & Costs | $16,185.11 |

Pet'rs' App., Exhibit A at 4, 8, 18, 20.

## II. Good Faith and Reasonable Basis

### a. Legal Standard

Section 15(e) of the Vaccine Act governs attorneys' fees. 42 U.S.C. § 300aa-15(e). When awarding compensation on a petition, the special master "shall also award" reasonable attorney's fees and costs. Id. at §15(e)(1)(A)-(B). Even when compensation is not awarded, the special master "may award" reasonable attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Id. at § 15(e)(1).

"Good faith" is a subjective standard and petitioners are entitled to a presumption of good faith. Hamrick v. Sec'y of Health & Human Servs., No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007); Grice v. Sec'y of Health & Human Servs., 36 Fed. Cl. 114, 121 (1996). Respondent does not challenge the presumption of good faith in this case, and the undersigned finds that this case was brought in good faith. Therefore, the question at issue is whether petitioner had a reasonable basis to file and pursue her claim.

The Vaccine Act does not define "reasonable basis," and neither the Federal Circuit nor the Court of Federal Claims has defined "reasonable basis" for purposes of fee awards under the Vaccine Act. Chuisano v. United States, 116 Fed. Cl. 276, 285 (Fed. Cl. 2014). The Court of Federal Claims has held that the statutory language of 42 U.S.C. § 300aa-15(e)(1)(B) grants the special master "maximum discretion in applying the standard." Silva v. Sec'y of Health & Human Servs., 108 Fed. Cl. 401, 402 (Fed. Cl. 2012).

Many special masters, as well as judges at the U.S. Court of Federal Claims, have determined that the reasonable basis requirement is an "objective consideration determined by the totality of the circumstances." McKellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. 297, 303 (Fed. Cl. 2011); Chuisano, 116 Fed. Cl. at 286. In determining reasonable basis, the court looks "not at the likelihood of success, but more to the feasibility of the claim." Di Roma v. Sec'y of Health & Human Servs., No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Factors to be considered include factual basis, medical support, and the circumstances under which a petition is filed. Turner, 2007 WL 4410030, at *6-9. A reasonable basis can exist even if medical records are not filed simultaneously with the petition. McKellar, 101 Fed. Cl. at 303. An attorney's pre-filing investigation into the feasibility of the claim is also a relevant factor in analyzing whether a petition had a reasonable basis. Cortez v. Sec'y of Health & Human Servs., No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014).

The burden is on petitioner to affirmatively demonstrate a reasonable basis, though "petitioner need not establish entitlement to compensation, or even that a claim is likely to succeed." McKellar v. Sec'y of Health & Human Servs., No. 09-841V, 2012 WL 362030, at *6-7 (Fed. Cl. Spec. Mstr. Jan 13, 2012), reversed on other grounds, 2012 WL 1884703 (Fed. Cl. 2012). Petitioner must furnish "some evidence" supporting the claims in the petition, but the evidentiary showing required is less than a preponderance of the evidence. Chuisano v. Sec'y of Health & Human Servs., No. 07-452V, 2013 WL 6234660, at *1, 13 (Fed. Cl. Spec. Mstr. Oct. 25, 2013).

As the undersigned recently explained, "it is well established that claims filed on the eve of the expiration of the Vaccine Act's statute of limitations are subject to a more lenient standard when determining if reasonable basis exists." Solomon v. Sec'y of Health & Human Servs., No. 14-0784V, 2016 WL 8257673, *3 (Fed. Cl. Spec. Mstr. Oct. 27, 2016); see also Hamrick v. Sec'y of Health & Human Servs., No. 99-683V, 2008 WL 4793152, at *5 (Fed. Cl. Spec. Mstr. Jan. 9, 2008) (noting this "long recognized" proposition). "However, this greater latitude should not be interpreted to allow for a finding of reasonable basis for every claim filed in this manner." Solomon, 2016 WL 82575673 at *3. The undersigned does not agree with respondent's contention that considering the statute of limitations creates a "presumption of reasonable basis in the absence of any supporting evidence." Resp's Response at 11. Petitioner must establish "a reasonable basis in fact, science, and law for [their] causal allegations." Id. at 10.

Furthermore, even if reasonable basis exists at the time the petition is filed, it "may later come into question if new evidence becomes available or the lack of supporting evidence becomes apparent." Chuisano, 116 Fed. Cl. at 288; see also Perreira, No. 93-5055V, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (affirming the special master's finding that reasonable basis existed until the evidentiary hearing); Hamrick, 2208 WL 4793152, at *4 (observing that "[p]etitioner's counsel must review periodically the evidence supporting petitioner's claim").

### b. Petitioner had a Reasonable Basis for her Claim

Based on the totality of the circumstances, and considering the factual basis, the medical records, the circumstances under which the petition was filed, and the conduct of petitioner's attorney, the undersigned finds that there was a reasonable basis for petitioner's claim up until it was dismissed on December 9, 2016. Specifically, petitioner's claim centered on a working diagnosis of lichen sclerosus. Petitioner's claim for this disorder, which may be immune-mediated, was feasible until petitioner retained an expert who reviewed the medical records and refuted that diagnosis.

Petitioner claims that she received the third Gardasil vaccine on December 17, 2012; that she began experiencing itching and pain in her genital area in mid-January 2013; and that she subsequently received a diagnosis of "autoimmune lichen sclerosus." Pet. at 1. Petitioner retained counsel on December 28, 2015. Pet'r's App. at 4. Recognizing a possible statute of limitations issue, petitioner initially filed a brief petition without any medical records, on January 4, 2016. The petition specifically noted that petitioner had recently contacted counsel as to a potential claim; the petition was being filed at that time to comply with the statute of limitations; and that the petition would be supplemented accordingly. Id. As discussed above, an impending statute of limitations may affect the determination of reasonable basis, in certain circumstances. In this case, petitioner believed that the onset of new or aggravated symptoms occurred in mid-January 2013 and that the limitations period would close in mid-January 2016. Therefore, some leniency may be appropriate while evaluating whether reasonable basis existed.

After filing her claim, petitioner maintained that onset was in mid-January 2013. Amended Pet. at 1; Pet'r's Statement at 1. Respondent disputed this alleged onset. Respondent asserted that the medical records show that petitioner experienced vaginal itching before the vaccine; she received the vaccine in December 2012; and afterwards, she did not experience

further symptoms until at least March 2012. Resp's Report at 9. However, this does not necessarily show that petitioner lacked a reasonable basis for her claim.

Petitioner also filed many medical records listing a diagnosis of lichen sclerosus, based on a possibly erroneous interpretation of the initial diagnosis or a confusing clinical course. Specifically, on November 27, 2013, petitioner saw Mark Spitzer, M.D., a gynecologic specialist, for chronic vaginal itching. Pet'r's Ex. 12 at 6-8. Dr. Spitzer recorded her symptoms and performed a colposcopy. Id. at 6-7. Dr. Spitzer concluded that petitioner had "lichen simplex chronicus" and prescribed two oral medications and a clobetasol propionate topical ointment. Id. at 8. At a follow-up visit on December 30, 2013, Dr. Spitzer wrote that petitioner's "lichen simplex chronicus . . . had resolved completely." Id. at 4.

However, three treating physicians subsequently recorded petitioner's condition as "lichen sclerosus." On May 7, 2014, Jennifer Hillman, M.D. at Student Health Services in St. Louis wrote that petitioner was diagnosed with "lichen sclerosis [sic]" in January 2014 and that petitioner "uses clobetasol for that." Pet'r's Ex. 2 at 49.[5]

Petitioner was then referred to Andrew Goldstein, M.D. at the Center for Vulvovaginal Disorders in Washington, D.C. During the initial consult on March 3, 2015, Dr. Goldstein wrote that petitioner "was seen by Dr. Spitzer one year ago and was diagnosed with lichen sclerosus after a vulvar biopsy." Pet'r's Ex. 8 at 1. Dr. Goldstein's initial assessment was "lichen sclerosus – active disease." Id. at 2. At a follow-up on May 14, 2015, Dr. Goldstein stated that petitioner had "lichen sclerosus – no active disease." Id. at 4.

Petitioner's primary gynecologist received Dr. Spitzer's initial assessment of lichen simplex chronicus in December 2015. Pet'r's Ex. 7 at 11-12. However, on May 27, 2015, the primary gynecologist wrote that petitioner had "hx lichen sclerosis [sic] – sees Andrew Goldstein." Pet'r's Ex. 7 at 2.

As detailed above, several treating physicians recorded petitioner's condition as lichen sclerosus. It was reasonable for petitioner to accept this diagnosis at the outset of her claim.[6] It also seems that petitioner was preparing to argue that lichen sclerosus is caused by an adverse immune response, which may be triggered by the HPV vaccine. The original petition alleged that the vaccine caused "<u>autoimmune</u> lichen sclerosus." Pet. at 1 (emphasis added). The amended petition went into more detail: it asserted that lichen sclerosus may be due to an "immune system dysfunction" and that "similar inflammatory dermatoses like lichen planus have

---

[5] Clobetasol ointment is recommended for the use of both lichen simplex chronicus and lichen sclerosus. See, e.g., Hope K. Haefner, M.D., University of Michigan Center for Vulvar Diseases, Presentation: Learn to Like the Lichens: Lichen Sclerosus, Lichen Simplex Chronicus, and Lichen Planus (2013), available at http://obgyn.med.umich.edu/sites/obgyn.med.umich.edu/files/Learn%20to%20like%20the%20lichens%20written%20text_0.pdf (last accessed March 8, 2017).

[6] The undersigned notes that respondent did not challenge the diagnosis of lichen sclerosus. See Resp.'s Report at 9-12 (arguing that compensation should be denied for various other reasons).

7

been causally linked to vaccination." Amended Pet. at 3. The amended petition also cited to a few journal articles. Respondent argued that petitioner's "mere reference to unfiled journal articles [was] insufficient to establish causation." Resp's Response at 11-12. However, at the status conference on August 30, 2016, "the parties discussed the best way to proceed and agreed to move forward with petitioner filing an expert report" addressing lichen sclerosus, its cause, and its manifestation in petitioner's case. Scheduling Order (ECF No. 20). Petitioner complied by retaining an expert, who reviewed the medical records, including the "original biopsy performed on petitioner."[7] Pet'r's Mot. at 2. The expert opined that petitioner did not have lichen sclerosus, instead, she had lichen simplex chronicus. Id. at 1-2. Furthermore, "lichen simplex chronicus would not be autoimmune in nature or triggered by vaccination at a site remote from the injection site." Id. at 2. Petitioner accepted this expert's opinion and subsequently requested a decision dismissing her claim. Id.

The undersigned finds that there was a reasonable basis for petitioner's claim, based on the totality of the circumstances, including the impending statute of limitations and three treating physicians' working diagnosis of lichen sclerosus. After filing the claim, petitioner properly supplemented the record and her claim about lichen sclerosus. She complied with the undersigned's order to retain an expert. Once the expert refuted this diagnosis, petitioner promptly recognized that she would not be able to prevail and moved for a decision dismissing the petition. Accordingly, petitioner is entitled to an award of reasonable attorneys' fees and costs.

### III. Reasonable Attorneys' Fees and Costs

#### a. Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the award based on other specific findings. Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (Fed. Cl. 2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent

---

[7] Based on the undersigned's review of the records, this "original biopsy" would appear to be the colposcopy performed by Dr. Spitzer on November 27, 2011.

8

and without providing petitioners notice and opportunity to respond.  See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 209 (Fed. Cl. 2009).  A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees.  Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).  Just as "[t]rial court courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." Saxton, 3 F.3d at 1521 (citing Farrar v. Sec'y of Health & Human Servs., 1992 WL 336502 at * 2-3 (Cl. Ct. Spec. Mstr. Nov. 2, 1992)).

### i. Hourly Rates

Petitioner requests the following hourly rates:

|  | **2016** | **2017** |
|---|---|---|
| **Attorneys** | | |
| Andrew D. Downing | $350.00 | $375.00 |
| Courtney Van Cott | N/A | $195.00 |
| **Paralegals** | | |
| Danielle P. Avery | $100.00 | N/A |
| Robert W. Cain | $100.00 | N/A |

Pet'r's App. - Exhibit A, p. 21; Pet'r's Supp. App. - Exhibit A, p. 3.

An hourly rate of $350.00 will be awarded for Mr. Downing's work in 2016.  The undersigned and other special masters have found that this was an appropriate rate for his work, in several recent cases.  See, e.g., Weggen v. Sec'y of Health & Human Servs., No. 15-1338V, 2016 WL 6576568 (Fed. Cl. Spec. Mstr. Oct. 13, 2016); Fuller v. Sec'y of Health & Human Servs., No. 15-1470V, 2016 WL 3999798 (Fed. Cl. Spec. Mstr. July 5, 2016); Uscher v. Sec'y of Health & Human Servs., No. 15-798V, 2016 WL 3670518 (Fed. Cl. Spec. Mstr. June 15, 2016); Al-Uffi v. Sec'y of Health & Human Servs., No. 13-956V, 2015 WL 6181669 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).  It is also reasonable in the present case.

However, the undersigned will not approve the requested hourly rate of $375.00 for Mr. Downing's work in 2017.  This would constitute a 7.14% increase from the rate awarded in 2016.  Petitioner does not provide any rationale for this requested increase.  Furthermore, it would exceed the 3.7% growth rate for attorneys' fees which is customary in the Program.  See McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 at *16 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).  The undersigned will apply the McCulloch growth rate, which results in an hourly rate of $363.00 for Mr. Downing's 10.1 hours of work in 2017.  Thus, the fee award is reduced by $121.20.

The undersigned finds that the requested rate of $195.00 per hour for work performed by Ms. Courtney Van Cott in 2017 is reasonable, based on her experience and qualifications.  In McCulloch, Special Master Gowen wrote that an attorney with under four years' experience may be appropriately awarded $150.00 to $225.00 per hour.  See McCulloch, 2015 WL 5634323 at *19.  Research did not identify any prior decisions determining the appropriate rate for Ms. Van

9

Cott, and petitioner did not provide any support for this rate. However, the firm's website provides that Ms. Van Cott graduated from the University of Southern California in 2010, *magna cum laude*, with a Bachelor of Arts degree in Biological Sciences. Id. She worked for one year researching breast cancer at the Translational Genomics Research Institute in Phoenix, Arizona. Id. She graduated from the Sandra Day O'Connor College of Law at Arizona State University in 2014. She was in private practice before joining Van Cott & Talamante PLLC.[8] Ms. Van Cott was admitted to the State Bar of Arizona on October 20, 2014.[9] Accordingly, the undersigned awards $195.00 per hour for Ms. Van Cott's work in 2017.

Petitioner requests $100.00 per hour for work performed by the firm's paralegals Danielle P. Avery and Robert W. Cain in 2016. This rate has been awarded in previous cases. See, e.g., Weggen, 2016 WL 6576568 (Fed. Cl. Spec. Mstr. Oct. 13, 2016); Fuller, 2016 WL 3999798 (Fed. Cl. Spec. Mstr. July 5, 2016); Uscher, 2016 WL 3670518 (Fed. Cl. Spec. Mstr. June 15, 2016). It is appropriate in the present case.

### ii. Hours Expended

On review of the billing record, the undersigned finds the hours expended reasonable. Mr. Downing was contacted by an individual who strongly believed that a vaccine caused her injuries, beginning approximately two years and eleven months prior. Mr. Downing recognized the possibility that the statute of limitations would run; he filed a petition to preserve her rights; and then he worked diligently to develop her claim. After obtaining an expert's opinion against causation, Mr. Downing and his client conferred and agreed to drop the case. The time spent under the circumstances was generally reasonable. The undersigned also finds that the hours expended in litigating the fee issue, billed in petitioner's supplemental application for attorneys' fees and costs, were reasonable.

However, it appears that the fee application contains several duplicative entries, which will not be compensated. On January 5, 2016, Ms. Avery made two identical billing entries, for 0.3 hours to "[r]eceive and review Court's ECF notification; process filed copy of Petition; receive, review, and process Court's Notice of ECF Designation, and Notice of Assignment to Special Master Nora Beth Dorsey." Pet'r's App, Exhibit A, at 10. On January 6, 2016, she twice billed 0.2 hours to "[r]eceive, review, and process Notice of Appearance filed by Voris Johnson, Jr., on behalf of Respondent." Id. On January 25, 2016, she billed 0.3 hours, and then 0.2 hours, to "[r]eceive, review, and process letter from Dr. Maryann B. Schaefer regarding Alexandra Toes." Id. at 13. On April 7, 2016, she twice billed 0.7 hours to "[o]rganize and prepare medical records for filing with the Court; bates stamp; draft Notice of Filing; email draft to ADD for his review and approval." Id. at 15. In total, Ms. Avery billed 1.4 hours at $100.00

---

[8] See Van Cott & Talamante, PLLC – Attorneys, http://nationalvaccineinjurylawyer.com/attorneys.asp (last accessed March 8, 2017).

[9] See State Bar of Arizona – Find a Lawyer – Ms. Courtney Christine Van Cott, http://www.azbar.org/FindALawyer.aspx?firstname=c&lastname=van&firmcompany=&keyword=#&&ECqfg/ebjPn3aS8Q7OovY/MtJojFTIU+D5UmJeVkucghA/2g+DFsg/cuoNVX8giOO1QxFOBKGjOrWuOi7f6S7lBP0zKWXmn6MnxilRbNKdTcPn5aJFVFbiN5cg9XSH/A (last accessed March 8, 2017).

per hour, totaling $140.00, for entries that appear duplicative. Accordingly, these are deducted from the fee award.

### b. Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests $4,346.24 in attorneys' costs. Pet'r's App. at 6; Pet'rs App., Ex. A at 20; Pet'r's Supp. App., Exhibit A at 2. The costs are associated with filing the claim; obtaining medical records; postage; photocopying and faxing; and obtaining an expert report. The undersigned finds them to be reasonable and awards them in full.

## IV. Conclusion

Based on all of the above, the undersigned finds that petitioner is entitled to the following award of reasonable attorneys' fees and costs:

| | |
|---|---:|
| Attorneys' Fees Requested | $16,133.50 |
| (Reduction to Mr. Downing's Hourly Rate in 2017) | -$121.20 |
| (Reduction for Duplicative Entries) | -$140.00 |
| **Attorneys' Fees Awarded** | **$15,872.30** |
| **Attorneys' Costs Awarded** | **$4,346.24** |
| **Total Attorneys' Fees and Costs Awarded** | **$20,218.54** |

**Accordingly, the undersigned awards a lump sum in the amount of $20,218.54, representing reimbursement for attorneys' fees and costs, in the form of a check jointly payable to petitioner Ms. Alexandra Toes and to petitioner's attorney, Andrew D. Downing of Van Cott & Talamante, PLLC.** [10]

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the cour**t SHALL ENTER JUDGMENT** in accordance herewith.[11]

**IT IS SO ORDERED.**

**s/ Nora Beth Dorsey**
Nora Beth Dorsey
Chief Special Master

---

[10] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs," and fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. See generally Beck v. Sec'y of Health & Human Servs., 924 F.2d 1029 (Fed. Cir. 1991).

[11] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.